Day, J.
 

 The question for determination in this controversy is the construction to be given Section 7623, General Code, especially paragraphs 5, 6 and 7 thereof, which are as follows:
 

 “5.
 
 When both labor and materials are embraced in the work bid for, each must be separately .stated in the bid, with the price thereof.
 

 “6. None but the lowest responsible bid shall be accepted. The board in its discretion may reject all the bids, or accept any bid for both labor
 
 *15
 
 and material for such improvement or repair, which is the lowest in the aggregate.
 

 “7. Any part of a hid which is lower than the same part of any other bid, shall be accepted, whether the residue of the bid is higher or not; and if it is higher such residue must be rejected.”
 

 An a,greed statement of facts is submitted in lieu of a transcript of the testimony and bill of exceptions, signed by the counsel of record for both parties, and so much thereof as is material for the law question here involved may be stated as follows:
 

 The defendants in error, J. W. Bright and others, are residents and property owners of Washington township rural school district, Belmont county, Ohio, and brought this action on behalf of themselves and other owners and taxpayers of the school district.
 

 The school board of that district in April, 1921, determined to build a school building, the cost of which would exceed $500, and thereafter it duly advertised for bids for the erection of such school building, the contract to be awarded under the advertisement embracing both labor and material.
 

 
 *16
 
 The plaintiffs in error, Joseph Wiley and Charles Wiley, filed a bid in the following form:
 

 Materials Labor Total
 

 $6,950 Excavation $6,950 $6,950
 

 6.950 Concrete work 6.950 6.950
 

 6.950 Stone work 6.950 6.950
 

 6.950 Brick work 6.950 6.950
 

 Carpenter work, mill work and lumber 6,950 6.950 6.950
 

 Roofing 6,950 6.950 6.950
 

 Lathing and plaster 6,950 6.950 6.950
 

 Painting, varnishing and glazing 6,950 6.950 6.950
 

 Total $6,950 $6,950 $6,950
 

 Alternate Bids.
 

 No. 1. Add according to specifications $ 180 $ 180 $ 180
 

 No. 2. Add according to specifications ____ .... ____
 

 Unit Prices.
 

 Price per cu. yd. for excavation
 

 Price per cu. yd. for' plain concrete in place, no forms
 

 Price per cu. yd. for plain concrete in place, with forms
 

 This bid or proposal was accepted by the board of education, and a contract for the construction of the building was awarded and entered into..
 

 It appears that one other bid, or proposal, was filed with the Board of Education for the erection of the school building, which was a lump sum bid for $8,301, which did not separately state therein the labor and material, with the price thereof.
 

 An injunction was sought by certain taxpayers in the court of common pleas of Belmont county to restrain completion of the contract, which was granted by the court of common pleas, and error was prosecuted to the Court of Appeals, which
 
 *17
 
 court rendered judgment in favor of the defendants in error, finding among other things:
 

 “We do further find that the bid of the contractor for said building was substantially in the following form: Labor $7,130, materials $7,130, and total $7,130 — and that said bid in said form was defective in that the bid for labor and materials embraced in the work bid for were not separately stated in the bid.”
 

 From the foregoing, it is deducible that the sole question for determination here is whether or not the failure to comply with paragraphs 5, 6 and 7 of Section 7623, General Code, renders a proceeding thereunder invalid.
 

 In construing the statute in question resort must be had to the usual rules of statutory construction, that full force and effect must be given to each and every part of the statute, if it can be done, and the entire statute construed so that its respective parts are consistent, and in the light of the further rule that special .statutes must receive construction over general statutes if any irreconcilable conflict appears.
 

 The history of Section 7623, General Code, under which this question arises, is as follows: It was originally enacted as a part of the School Code passed in 1873 (70 O. L., 195-211), and in practically the same form in which it was. originally enacted it has remained on the statute books down to the present time.
 

 The purpose of the statute is doubtless to enable school boards to have the schoolhouses and other structures under their control erected and maintained at the lowest cost to the public consistent
 
 *18
 
 with, the best material and workmanship. To that end doubtless, power was given the bo„ard to select either labor or material for such improvement or repair that was lowest in the aggregate, or, if any part of one bid was lower than the same part of another bid, to accept the lowest part, and if some portions thereof were higher to reject them.
 

 If any discretion is granted to the board, the phraseology of the statute, employing language mandatory in character, leaves that discretion to be exercised only within the limited degree permitted by the statute. Provision is made that the labor and materials “must be separately stated in the bid, with the price thereof,” and, further, that “Any part of a bid which is lower than the same part of any other bid, shall be accepted,” etc.
 

 Language of this character can have but one interpretation, which is that, in view of the fact that it relates to the action of boards of education in building and repairing schoolhouses, and is not of universal character, relating to public buildings generally, it must receive the construction given enactments relating to special subjects.
 
 Mutual Electric Co.
 
 v.
 
 Village of Pomeroy,
 
 99 Ohio St., 75, 124 N. E., 58.
 

 Words like “must” and “shall” are sometimes used in other than their literal meaning, but the construction to be given depends upon the object evidently designed to be reached by the legislative enactment, and we must look thereto to determine the meaning and import of the terms, phrases and words employed.
 

 The minute directions set forth in Section 7623, General Code, and the great care with which the
 
 *19
 
 section was originally drawn, and with, which it has been retained without change since 1873, lead us to the conclusion that the phraseology therein employed was placed there advisedly, and to serve as a check and limitation upon the exercise of a wide discretion in building and repairing schoolhouses, except under circumstances and to the degree in the specific language pointed out.
 

 Our attention has been, called to the construction given Sections 2362, 2363 and 4329, General Code, by the courts of this state, but sufficient is it to say that the language employed in those sections relates to building regulations generally, and to those of municipalities, and not to those of a special nature, such as the buildings provided for in Section 7623 under consideration.
 

 Again, the language is far less mandatory than as found in the section relating to sehoolhouses. It should also be noted that this action was begun by a taxpayer to enjoin a contract about to be entered into in violation of the statutory provisions, and is to be distinguished from cases of estoppel, which apply in suits by a contractor to secure pay for work done for the benefit of the public, which work the public retains and of which it seeks to enjoy the benefit without paying therefor, even though there may have been some failure to follow all statutory provisions. In such instances the doctrine of estoppel has been applied.
 

 Our attention is called to the case of
 
 State, ex rel. Ross,
 
 v.
 
 Board of Education,
 
 42 Ohio St., 374, but we must bear in mind that case was an action in mandamus brought by an unsuccessful bidder to compel the board of education to award him a con
 
 *20
 
 tract, when the board had already awarded the same to a rival bidder. It appears that both bids were in irregular form, and it was held that the relator must .show a clear legal right in himself and that it was not enough to show defect in the title of another to whom the contract had been awarded. The action was not brought by a taxpayer, as in the present instance. The closing language of the opinion is significant:
 

 “The validity of the contract entered into between the board of education and Newell [the successful bidder] is not a question involved in this case.”
 

 And while it may be claimed that the syllabus, in
 
 State, ex rel. Ross,
 
 v.
 
 Board of Education, supra,
 
 is the law of the case, yet that must be taken in the light of the pronouncement of this court in
 
 In re Poage, 87
 
 Ohio St., 72, at page 82, 100 N. E., 125, at page 128:
 

 “It must be remembered that every syllabus that is written must be read in view of the facts found in the case decided, for it is not possible for a court to comprehend in every .syllabus all the many phases of facts that may arise in other litigations touching similar transactions.”
 

 We do not by any means deny that a reasonable discretion is placed in the board of education in school matters, and the Legislature recognized that fact by providing in Section 7623 that—
 

 “Except in cases of urgent necessity, or for the security and protection of school property, it must proceed as follows.”
 

 And, further, bidders doubtless many times may be willing to furnish material and labor together at a smaller amount than the true total of the bids
 
 *21
 
 for labor and material separately; but we are of opinion that some reasonably accurate value should be given in the separate bid for labor and the separate bid for material, even though the total, as given in the bid, be lower than the true total thereof, and that to place the figure at the same amount for the labor, the material and the total thereof is in utter disregard of the letter, spirit, and intent of the section of the statute in question, and subversive of its purpose.
 

 Boards of education are creations of statute, and their duties and authority are marked by legislation, and those who contract with them must recognize the limitations placed by law — by the power that created such boards. The language of the statute under consideration is clear, plain, positive, and mandatory, and, if the object sought to be obtained by the Legislature is not the best for the public, its amendment or revision may be sought in the Legislature, but as long as the law remains upon the statute books in its present form we must give it such construction as its plain letter requires.
 

 Entertaining this view, we have reached the conclusion that the defect in the bid in the ease under consideration is such as to render the same in violation of the statutory provisions, and that there was such an omission to do the things required by the statute as to make the bid void. The judgment of the Court of Appeals in so holding will therefore be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Wanamaker, Robinson, Jones, Matthias and Allen, JJ., concur.